## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| TABETHA KOHLER, | : | |
| Plaintiff, | : | |
| | | Case No. 3:14cv00163 |
| vs. | : | |
| | | District Judge Thomas M. Rose |
| CAROLYN W. COLVIN, | : | Chief Magistrate Judge Sharon L. Ovington |
| Acting Commissioner of the Social | | |
| Security Administration, | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATIONS[1]

### I.  Introduction

Plaintiff Tabetha Kohler brings this case challenging the Social Security Administration's denial of her application for Supplemental Security Income.  She asserts here, as she did before the administration, that she has been under a benefits-qualifying disability – starting on January 15, 2007 – due to bipolar disorder, severe anxiety, severe depression, post-traumatic stress disorder, cervical degeneration, cervical stenosis, and osteoarthritis in her lower back.

The case is presently before the Court upon Plaintiff's Statement of Errors (Doc. #9), the Commissioner's Memorandum in Opposition (Doc. #10), Plaintiff's Reply (Doc.

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

#13), the administrative record (Doc. #6), and the record as a whole.

## II.     Background

### A.     Plaintiff's Testimony

Plaintiff was 24 years old on her alleged disability onset date, placing her in the category of a "younger person" for purposes of resolving her claim for SSI. *See* 20 C.F.R. § 416.963(c). She has a high school education. Her past relevant employment includes work as a cashier and telemarketer.

At her administrative hearing in October 2012, Plaintiff testified she lives with her boyfriend and two children. (*PageID#* 72). Her son was born in 2005 and her daughter was born in 2009. Plaintiff is 5' 6" tall and weighs approximately 220 pounds. She has not had a full-time job since 2006, when she was a cashier at a Meijer gas station. (*PageID#* 75). She quit that job because it was "stressful on [her] body." (*PageID#* 78). She last worked part-time in 2009, packaging small items into bags. She has not worked since she had her daughter in 2009. When asked why she has not applied for any jobs since then, Plaintiff stated, "I have severe anxiety. My body limits me to, to what I can do. And the sitting and the standing and the lifting, it really takes a toll on my body, and that's why I haven't." (*PageID#* 78).

Plaintiff described her typical day as follows:

> I get up in the morning. I get my children ready for school. I take my son to school, I come back home with my daughter, finish getting her ready and bathing her, do her hair, feed her, wait for her bus. And I try do to some chores, not many. My pain varies from day to day. On good days I can get them done that day and bad days I can't. I have to space them out. It takes me about an hour and a half to

> do dishes because I have to take breaks because it hurts to stand and my legs start swelling. And I sit on a couch and curl up. It's the only thing that really soothes sometimes. And get her on the bus. Then she gets on the bus and an hour later my son comes home, so I have to go pick him up and then feed him. And then try to finish the chores that I didn't do, like sweeping or so forth.

(*PageID#* 79). Plaintiff also indicated she is able to drive and goes to the grocery store once a month, around midnight, to avoid crowds. She stated she does not have any hobbies, does not have a computer, and does not have a cell phone. (*PageID#* 80). Approximately 3 days per week she does not bathe or change her clothes. She believes she is unable to work because of anxiety talking with people and depression. Her ankles, feet, and fingers also swell. She has pain in her lower back. She estimates she can lift no more than a gallon of milk.

Her primary care physician prescribes her Abilify, Lexapro, Klonopin, and Vicodin. She has been taking Vicodin and a muscle relaxer for approximately 2½ years. She takes a 500 mg dosage of Vicodin 3 times per day and a muscle relaxer about 2 to 3 times per day. (*PageID#* 89). The Vicodin usually helps with the pain but makes her "very tired." (*PageID#* 87). The last time she saw a mental health professional was approximately 6 months prior to the hearing. She has not gone back because of her "children's schedules and it was chaotic taking them . . . to therapy or to the psychiatrist." (*PageID#* 85). Plaintiff has migraines approximately once a week. She testified they last from 30 minutes to 2 days. She last went to the ER for a migraine 3 days prior to the hearing. (*PageID#* 88). Plaintiff testified she does not smoke, drink, or abuse drugs. (*PageID#* 90). When she takes her children to the park she is not able to play with them; she only sits and

watches.  She stated, "I don't get involved in activities because it's too strenuous moving around and bending up and down."  (*PageID#* 92).

### B. Medical Evidence

The administrative record contains many medical records plus opinions from Plaintiff's treating and non-treating medical sources.  A detailed description of those records and opinions is unnecessary because the undersigned has reviewed the entire administrative record and because the ALJ, Plaintiff's counsel, and the Commissioner have accurately summarized the relevant records concerning Plaintiff's physical and mental impairments with citations to specific evidence.

### III. "Disability" Defined and the ALJ's Decision

The Social Security Administration provides Supplemental Security Income (SSI) to indigent individuals, subject to several eligibility requirements.  Chief among these, for purposes of this case, is the "disability" requirement.  To receive SSI, an applicant must be a "disabled individual."  42 U.S.C. § 1381a; *see Bowen v. City of New York*, 476 U.S. 467, 470 (1986).  The phrase "disabled individual" – as defined by the Social Security Act – has specialized meaning of limited scope.  It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job – *i.e.,* "substantial gainful activity," in Social Security lexicon.[2]  42 U.S.C. §

---

[2] In addition, the impairment must be one "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).

1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70.

To determine whether Plaintiff was under a benefits-qualifying disability, Administrative Law Judge (ALJ) Kim S. Nagle applied the Social Security Administration's 5-Step sequential evaluation procedure. *See* 20 C.F.R. § 416.920(a)(4)(I)-(v). Steps 2, 3, and 4 are the most significant in this case.

At Step 2, the ALJ concluded that Plaintiff had several impairments, namely, "spinal disorder, obesity, affective disorder, anxiety disorder and personality disorder." (*PageID#* 46).

At Step 3, the ALJ concluded that Plaintiff's impairments or combination of impairments did not meet or equal the criteria in the Commissioner's Listing of Impairments, including Listings 1.04, 12.04, 12.06, and 12.08. (*Id.*).

At Step 4, the ALJ concluded that Plaintiff retained the residual functional capacity[3]:

> to perform medium work as defined in 20 CFR 416.967(c) except with no climbing of ladders, ropes or scaffolds, only occasional stooping, crouching and crawling and with no more than frequent exposure to extreme cold temperatures, humidity, pulmonary irritants (such as fumes, odors, dust and gases), and hazards (such as dangerous moving machinery and unprotected heights). Moreover, the claimant is limited to simple and repetitive tasks with no more than occasional interaction with the public, co-workers and supervisors.

(*PageID#* 49). The ALJ also concluded at Step 4 that Plaintiff's "medically determinable

---

[3] A social-security claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. § 404.1545(a); *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

5

impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible . . . . " (*PageID#* 50).

The sum and substance of the ALJ's sequential evaluation ultimately led the ALJ to conclude that Plaintiff was not under a benefits-qualifying disability.

## IV. Judicial Review

Judicial review of an ALJ's decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . . " *Rogers*, 486 F.3d at 241; *see Gentry*, 741 F.3d at 722.

The second line of judicial inquiry – reviewing for correctness the ALJ's legal

criteria – may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

V. <u>Discussion</u>

1.

Plaintiff first contends the ALJ erred by failing to determine whether her migraines constitute a severe impairment and any resulting limitations caused as a result. (Doc. #9, *PageID#* 877-78). Plaintiff argues that the focus on her migraines during the administrative hearing "serves to highlight and magnify the unreasonableness of the ALJ's failure to substantively discuss this impairment or to identify what limitations have been reasonably occasioned by the same." (*Id.*).

The Commissioner contends the fact the ALJ did not consider Plaintiff's migraines as a severe impairment at Step 2 is legally irrelevant. (Doc. #10, *PageID#* 890). The Commissioner further argues that, even if Plaintiff's migraines should have been considered severe, she has nonetheless failed to prove they caused any additional limitations on her ability to work, or lasted, for 12 months or more in duration. (*Id.*).

The Commissioner is correct in noting that the ALJ's failure to consider Plaintiff's migraine headaches as a severe, instead of non-severe, impairment in this case is "legally irrelevant." The ALJ determined Plaintiff had other severe impairments, namely spinal disorder, obesity, affective disorder, anxiety disorder and personality disorder. (*PageID#* 46). Thus, Plaintiff cleared Step 2. *See Simpson v. Comm'r of Soc. Sec.*, 344 Fed. Appx. 181, 190-91 (6th Cir. 2009) ("This Court has previously found it 'legally irrelevant' that some of a claimant's impairments were considered non-severe, when others were found to be severe, because a finding of severity as to even one impairment clears the claimant of step two of the analysis and should cause the ALJ to consider both the severe and nonsevere impairments in the remaining steps.") (internal citations omitted).

The question next becomes whether the ALJ properly considered and accounted for any limitations caused by Plaintiff's migraines throughout the rest of her decision. The ALJ did. Plaintiff may have desired specific limitations be included in her residual functional capacity to account for symptoms she alleged occurred as a result of migraine headaches, however, the residual functional capacity formulated by the ALJ is supported by substantial evidence and should not be disturbed. *Blakley*, 581 F.3d at 406 ("The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts."). Moreover, it cannot be said the ALJ overlooked or completely ignored Plaintiff's migraine headaches. In fact, she spent a significant portion of her decision discussing them, as follows:

> [Plaintiff] also reported suffering from migraine headaches, which allegedly

>occurred once a week for 30 minutes to 2 days in duration, were triggered by light or sound and relieved by being in a dark, quiet room or with hospital treatment. She reported she last went to the emergency room on October 9, 2012, due to her migraines.
>
>. . .
>
>With regard to her migraine headaches, in February 2011, the claimant complained that her headaches caused her to get sick (Exhibit 7F).  In March 2011, the claimant presented to Miami Valley Hospital again complaining of migraines, associated with photophobia; she also complained of diffuse neck pain, which she associated with straining her neck while picking up her daughter the day earlier (Exhibit 22F). She was diagnosed with a migraine headache and exacerbation of neck pain, but the claimant eloped during treatment, apparently taking with her the IV catheter (Exhibit 22F).  In April 2011, she presented to Grandview Hospital with a "knot" causing headaches, which were not responsive to Vicodin; a CT scan of her head was normal and she was diagnosed with a tension headache (Exhibit 23F).  In August 2011, she returned to Grandview Hospital with a migraine, blurred vision and earache; she was provided medication and discharged to home (Exhibit 24F). Notably, in December 2011, the claimant reported her headaches had been less frequent (Exhibit 29F).  Nonetheless, in March 2012 the claimant returned to Grandview Hospital with another headache and abdominal pain; however, a CT scan of her head was again normal, as was a CT scan of her abdomen, and she had been able to drive herself to the hospital (Exhibit 27F).  Noting her white blood cell count was normal, she was placed on Vicodin and Motrin and discharged (Exhibit 27F).

(*PageID##* 50, 53-54).  The minimal treatment records relating to her migraines do not tend to support a finding that Plaintiff had any work-related limitations as a result of her migraines.  In fact, as the ALJ noted, Plaintiff drove herself to the hospital during one such migraine and ran off before treatment had finished during another.  (*PageID##* 53).  In addition, the ALJ was not required to accept as true every symptom she reported and provide a corresponding limitation in the residual functional capacity assessment to account for it.  Plaintiff fails to take into account the ALJ did not find her credible,

9

specifically noting that "the information provided by [her] generally may not be entirely reliable," and her "statements concerning the intensity, persistence and limiting effects of . . . symptoms are not entirely credible . . . ." (*PageID#* 50). In particular, the ALJ noted her claims of "debilitating symptoms and headaches" were not credible. (*Id.*). Given the ALJ's discussion regarding Plaintiff's migraines, the minimal treatment records, and Plaintiff's lack of credibility,[4] the Court finds substantial evidence exists in the record supporting the ALJ's residual functional capacity assessment. Plaintiff may have desired additional limitations to be included in her residual functional capacity, however, she has not established the ALJ erred in her decision not to do so. Accordingly, Plaintiff's first assignment of error lacks merit.

**2.**

Plaintiff's second assignment of error is much like her first: the ALJ erred by failing to properly determine whether her ovarian cysts constitute a severe impairment and any resulting limitations. (*Id.*).

The fact the ALJ did not determine whether Plaintiff's ovarian cysts constitute a severe impairment is, as with her migraines, "legally irrelevant." *See Simpson,* 344 Fed. Appx. at 190-91. The Commissioner is also again correct in noting that Plaintiff did not allege any disabling limitations from the ovarian cysts and the record does not support a finding that any limitations existed. Plaintiff's reliance on *Cox v. Comm'r of Soc. Sec.*,

---

[4] *See also Section 3, infra.*

3:14cv23, 2015 U.S. Dist. LEXIS 25168 (S.D. Ohio Mar. 2, 2015) is also misplaced. (Doc. #13, *PageID#* 912).  In *Cox*, the ALJ failed entirely to provide any indication that he actually considered plaintiff Charles Cox's carpal tunnel syndrome at any step in the sequential analysis.  *Cox*, 2015 U.S. Dist. LEXIS 15880 at *14.  The Court noted that the failure to consider Cox's carpal tunnel syndrome was "particularly troublesome" in light of the ALJ's colloquy with plaintiff at the administrative hearing.  During that discussion, Mr. Cox stated he had been diagnosed with carpal tunnel syndrome in both hands, specifically discussing how it prevents him from using both hands because they constantly curl up and cause him significant pain.  (*Id.* at *13).  In this case, unlike the ALJ in *Cox*, the ALJ did not ignore or completely overlook Plaintiff's impairment.  She noted and properly considered Plaintiff's abdominal pain and ovarian cysts in her decision.  (Doc. #54).  Moreover, while the plaintiff in *Cox* testified his carpal tunnel syndrome prevented him from using his hands on a daily basis, Plaintiff in this case made no similar statements that her ovarian cysts somehow caused her any limitations, let alone work-preclusive ones.  The minimal treatment records, with infrequent trips to the emergency room, likewise do not support such a finding.  For these reasons, Plaintiff has not shown any error in the ALJ's consideration of her ovarian cysts and her argument lacks merit.

### 3.

Plaintiff also challenges the ALJ's assessment regarding her credibility.  (Docs. ##9 and 13).  She contends the ALJ's adverse findings regarding her daily activities and reliance upon select portions of Dr. Flexman's report do not support her conclusions.

(Doc. #13, *PageID##* 912-13).  The Commissioner contends the ALJ properly considered Plaintiff's daily activities and substantial evidence supports her credibility assessment. (Doc. #10, *PageID#* 895).

The ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible . . . ." (*PageID#* 50).  The ALJ then supported her credibility finding in great length, as follows:

> Despite the claimant's alleged functional limitations, her own admissions (as represented in her Function Report and in statements to a consultative examiner) suggest her limitations are not entirely work-preclusive and negatively affect her credibility (Exhibits 5E, 10F).  She admitted she cared for two children (which included taking them to appointments, brushing their teeth, bathing and changing them), prepared meals, cleaned, did the laundry (with some assistance), drove a vehicle, went out alone, shopped in stores, handled finances, spent time with others via the telephone and in person and regularly went to doctors' offices, physical therapy and the grocery store.
>
> Moreover, the claimant testified that she got her young children ready for school, brought her son to school, bathed, fed, groomed and dressed her daughter and put her on the bus.  She testified that she shopped once a month.  Notably, prior to this school year, when her three-year-old daughter enrolled in preschool, the claimant was home caring for her (then-toddler) daughter full-time.  She admitted she did some chores, but purportedly needed breaks while doing the dishes due to her feet swelling.  The claimant admitted she drove on a daily basis.  The claimant's admitted breadth and depth of daily activities, including caring for young children several hours daily, belies her claims of debilitating symptoms and headaches.
>
> Despite alleging asthma, she admitted that she last used her inhaler eight or nine months prior to the hearing.  The claimant's use of medications does not suggest the presence of impairments which is more limiting than found in this decision.
>
> As noted above, the claimant either failed to show up at doctors' appointments,

> wanted to quit treatment or refused treatment, indicating non-compliance (Exhibits 6F, 30F, 31F).  She also left a treating facility against medical advice (Exhibit 22F).  The claimant's failure to follow-up on treatment recommendations or to comply with treatment suggests that the symptoms may not have been as serious as has been alleged in connection with this application and appeal.
>
> Moreover, I note that objective tests and studies do not support her allegations, with one treating physician noting very little objective findings (Exhibit 32F).  Significantly, the record does not contain any opinions from treating or examining physicians indicating that the claimant is disabled or even has limitations greater than those determined in this decision; in fact, in April 2010 a treating physician advised that the claimant should undertake gainful employment (Exhibit 4F).  Medication has been effective with only mild side effects (namely, some drowsiness), which side effects have been accommodated by the residual functional capacity.  Finally, there is evidence that the claimant was less than fully cooperative and put forth less than maximal effort during a May 2011 consultative examination (Exhibit 10F).

(*PageID#* 51).

"[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.  However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (internal citations omitted).  Substantial evidence must support the ALJ's reasons for discounting the applicant's statements.  *See id*. at 248-49.  In addition, Social Security Ruling 96-7p, 1996 SSR LEXIS 4 (July 2, 1996), instructs ALJs to "consider the entire record and give specific reasons for the weight given to the individual's statements."  And, the ALJ's

13

"reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision . . . ." *Id*.

Plaintiff's argument regarding the ALJ's credibility decision is without merit.  The ALJ in this case not only properly considered Plaintiff's activities of daily living, but also her medical treatment records, medical source examinations, lack of objective evidence in the records, and non-compliance.  The ALJ provided numerous examples supporting her finding, with specific references to the record.  For example, in support of her credibility finding the ALJ noted that Plaintiff was non-compliant with treatment and left a treating facility against medical advice.  (*PageID#* 51, citing to Exhibits 6F, 30F, 31F, and 22F).  The ALJ also accurately noted the lack of support in the record for Plaintiff's allegations and the fact a physician opined that Plaintiff should undertake gainful employment.  (*PageID#* 51, citing to Exhibit 4F); *see PageID#* 366 ("[Plaintiff] should be encouraged to undertake normal activities including gainful employment, etc.").  In addition, while the ALJ did consider Plaintiff's activities of daily living, she did not, as Plaintiff asserts, principally rely upon such findings to support her credibility assessment.  The ALJ considered the overall evidence in the record and noted, with specific citation to exhibits, numerous examples not relating to Plaintiff's activities of daily living that support her conclusions regarding credibility.

Substantial evidence supports the ALJ's findings when "a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 406 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)).

Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . ." *Rogers*, 486 F.3d at 241.  In this case, a reasonable mind could conclude the evidence relied upon by the ALJ is adequate to support her credibility finding, and thus, substantial evidence supports her conclusion.  Accordingly, deference is given to the ALJ's credibility finding regardless of whether or not the Court agrees with it. *Blakley*, 581 F.3d at 406; *see Rogers*, 486 F.3d at 241.

For these reasons, Plaintiff's Statement of Errors lacks merit and the ALJ's decision should not be disturbed.

## IT IS THEREFORE RECOMMEND THAT:

1. The Commissioner's non-disability determination be **AFFIRMED**; and

2. The case be terminated on the docket of this Court.

June 15, 2015

                                                                                     s/Sharon L. Ovington
                                                                                       Sharon L. Ovington
                                                              Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).